[Cite as *State v. Crist*, 2020-Ohio-6975.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio/City of Bryan          Court of Appeals Nos. WM-19-026
                                         WM-20-002

         Appellee

                                       Trial Court Nos. CRB1900586
v.                                              CRB1900569

Jason M. Crist                      **DECISION AND JUDGMENT**

         Appellant                  Decided:  December 30, 2020

* * * * *

Rhonda L. Fisher, Bryan City Attorney, for appellee.

Clayton M. Gerbitz, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} In this consolidated appeal, appellant, Jason M. Crist, appeals from the December 20, 2019 judgment of the Bryan Municipal Court sentencing appellant following his conviction by a jury of domestic violence, a violation of Montpelier Codified Ordinance 537.14(a), and violating a civil protection order, a violation of R.C. 2919.27(A)(1).  For the reasons which follow, we affirm.

{¶ 2} Appellant asserts two assignments of error on appeal:

I. Appellant received ineffective assistance of counsel.

II. Appellant's convictions were against the weight of the evidence.

{¶ 3} The following evidence was admitted at trial. Austin Crist testified he lives in the family home in Montpelier, Ohio, which is owned by his mother, Denise Crist, who was no longer living at the home. Appellant testified that at that time he lived in the home but spent a lot of time at the home of his girlfriend. Austin testified appellant was living with his girlfriend but would occasionally return to the family home. Denise Crist testified she had been driving by the home every weekday morning in August 2019 and had never seen appellant's car at the home.

{¶ 4} Leading up to the evening of August 14, 2019, appellant and Austin had been having an argument through texts and phone calls about whether Austin should be paying rent and all of the utility bills, which were in appellant's name. Appellant confirmed that he had not paid the bills just prior to this argument because he did not have the funds.

{¶ 5} On August 14, 2019, Austin Crist left for his third shift work but returned home early around 11:00 p.m. Appellant, who had been at his girlfriend's home, was returning to the family residence around midnight to pick up some personal items before returning to her home. Austin and appellant disputed what happened next.

{¶ 6} Austin testified that shortly after he returned home he was talking to his brother, Aaron, on the phone, when appellant unexpectedly came into the house.

2.

Because appellant was yelling and sounded irrational, Austin laid the phone on the bathroom sink and Aaron stayed on the line to listen. Appellant was telling Austin he had to leave because the police were on their way to throw him out for failing to pay rent and utilities. Austin came out of the bathroom and challenged appellant's ability to kick Austin out. Austin further testified that when challenged, appellant became very violent and aggressive.

{¶ 7} Appellant threatened to throw out or destroy Austin's belongings and tried to flush an item down the toilet. When Austin went to grab the item, appellant pushed Austin backwards and drew a gun from his waistband. Austin recognized the gun as his mother's and denied it had been in the home. Austin rushed appellant and pushed the gun above their heads. They struggled over the gun until appellant dropped it behind his head. Austin pushed appellant and grabbed the gun and the phone before running outside. Austin denied hitting appellant with the gun, but admitted appellant could have been accidently struck during the struggle. Austin asserted he had been hit in the stomach during the struggle. Outside, Austin unloaded the gun and discovered there was a bullet in the chamber and the safety was off. He placed the gun on a boat in the driveway and called the police.

{¶ 8} Aaron testified he could hear appellant yelling profanities and rummaging sounds. When Austin came back on the phone, he told Aaron appellant had drawn a gun. Both Austin and Aaron testified appellant's behavior was not typical. Aaron testified he had seen appellant with the gun at Aaron's home a couple of times.

3.

{¶ 9} Appellant testified to a different scenario. He denied he was aggressive and asserted he was afraid of Austin and Aaron who were becoming more aggressive because of drug use, a fact which Austin denied. Appellant was also afraid of Austin because he practiced jujitsu, but Austin denied having advanced skill. Appellant testified he had picked up the gun that night while retrieving his personal items to prevent Austin from harming himself because he was acting very depressed and angry, had threatened to beat appellant to death, and had been hearing voices. The officer on the scene testified, however, that Austin did not appear to be on drugs nor suicidal that night. Appellant further testified that he ensured the chamber was empty before putting the gun in his waistband. He also testified that this particular gun did not have a safety to disengage.

{¶ 10} Appellant testified that after Austin came out of the bathroom, he began smoking marijuana, which made appellant angry. Appellant tried to flush the marijuana down the toilet because it was in his house. At that point, Austin became enraged and pushed appellant into baskets of clothing by the washer and dryer. Every time appellant got back on his feet, Austin pushed him down again. At one point, the gun became dislodged and fell on the floor. Austin grabbed it, hit appellant on the head with it, and ran outside. Appellant denied brandishing the gun.

{¶ 11} Appellant also testified his girlfriend came over the night of the incident but none of the officers would take her statement. One officer recalled speaking to the girlfriend briefly, but since she was not present for the altercation, did not speak to her further.

4.

{¶ 12} The two responding officers testified the testimonies of Austin and appellant were consistent with their accounts of the events that night. One officer believed the scratches on appellant's head were more consistent with Austin's account of a struggle than appellant's account of having been pistol whipped. Both officers found Austin to be very shaken. The officers decided appellant had been the primary aggressor and charged him because he had involved a gun in the argument and, although he claimed he was afraid of Austin, had confronted him.

{¶ 13} Denise Crist testified that when she arrived at the home after the incident, appellant admitted to her that he had carried the gun because he was scared of Austin. She described both appellant and Austin as non-violent people.

{¶ 14} After the incident, Austin testified he left the house and went to his brother's home to stay. When he returned, he found he did not have electricity and a padlock was on the electrical box.

{¶ 15} Appellant acknowledged the court informed him at his arraignment that a temporary restraining order had been issued, which required appellant to stay away from Austin and that appellant could not return home if Austin was there. A recording of the arraignment hearing played for the jury confirmed that the court only told appellant to stay away from Austin. Appellant further testified he lost the papers he had been given at court while he was in jail before he had an opportunity to review the papers.

{¶ 16} Appellant testified that the next day he called the police to assist him in retrieving his personal property from the home because Austin's car was there. The

5.

officer agreed to ask Austin for the items, but Austin did not answer the door. The officer testified he told appellant he could not go inside, but the officer would call Austin to make arrangements for retrieving appellant's belongings. The officer also testified appellant indicated he had contacted the utility companies to cut off the power and gas, but appellant denied having this conversation. The officer further testified he advised appellant that inferring with the utilities would violate most temporary restraining orders. After the officer left, appellant watched from a neighbor's home and saw Austin leave. Appellant entered the home and found Austin had left on all of the lights. Because appellant was responsible for the utilities and there was a fee to have the utilities cut off, he obtained a padlock from the neighbor and turned off the electricity breaker and padlocked the box.

{¶ 17} One of the officers who had responded to the call on August 15, 2019, called Austin on August 17, 2019, and learned that his electricity had been shut off and a lock installed. Appellant testified that after he learned his actions were a violation of the temporary restraining order, he had the padlock removed.

{¶ 18} In his first assignment of error, appellant argues that the totality of errors by his attorney deprived him of his Sixth Amendment right to appointed counsel. Appellant asserts his counsel failed to comply with the Crim.R. 16(I) and provide appellee with notification of numerous documents and witnesses, which caused appellee to challenge the use of the evidence.

6.

{¶ 19} Because an attorney is presumed competent, appellant bears the burden of proving his counsel was ineffective. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Lott*, 51 Ohio St.3d 160, 174, 555 N.E.2d 293 (1990). To establish a claim of ineffective assistance of appointed counsel, the defendant must show that his counsel's representation "fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. *See also Strickland*, *supra*, at 687-689.

{¶ 20} First, regarding the documentary evidence, when appellee objected to the defense introducing documentary evidence which had not been disclosed in discovery, the trial court would not allow the evidence and defense counsel withdrew the evidence without making a proffer. Therefore, trial counsel's decision to withdraw the documentary evidence was a matter of trial strategy. We find no merit to appellant's argument that trial counsel was ineffective with respect to her handling of the documentary evidence in this case. *See State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101 ("Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel.").

{¶ 21} Second, defense counsel subpoenaed a certain witness to purportedly corroborate appellant's testimony regarding Austin's and appellant's temperaments.

7.

Defense counsel indicated she filed subpoenas a month prior to trial, but an error occurred and appellee was never provided notice of the witnesses. Furthermore, appellee argued the proposed witness testimony would have been inadmissible under Evid.R. 608.

{¶ 22} At the beginning of the trial in this matter, which commenced on November 19, 2019, appellant's trial counsel acknowledged her failure to confirm that the witness list was served upon the state, as follows:

> [DEFENSE COUNSEL]: * * * With respect to the witnesses, however, subpoenas were issued to those witnesses on October 18th. It's the common practice of our office to ensure that there's sufficient copies of the praecipes for all parties. I assumed at that time that the praecipes had been served on the State and the State was aware of them. So the fact that the State is not aware of them, I apologize for it. But I believe they are not – the witnesses' testimony today is simply corroborative. It's not going to be – * * * it's not going to declare the Defendant innocent or guilty. It's just simply going to be supportive of his testimony.

The following morning, the issue concerning appellant's untimely disclosure of the witness was revisited, as follows:

> THE COURT: Who is the potential witness that you're going to be calling or want to call next?

8.

[DEFENSE COUNSEL]: The only potential witness is Kandice Latta, who is the Defendant's girlfriend, and she will simply testify as to his peaceful nature pursuant to * * * Rule of Evidence 404.

* * *

THE COURT: Should that have been supplied to the Prosecutor prior to Friday?

[DEFENSE COUNSEL]: It should have been, Your Honor, and I had assumed - counsel had assumed it had been, and I - because of the praecipe that was sent to the Court with copies was why I thought it would be served on the Prosecutor.

THE COURT: Well, I'm not going to set a precedent of allowing last-minute witnesses just to appear willy-nilly and show up and testify. So I'm not going to allow that.

[THE STATE]: Thank you.

[DEFENSE COUNSEL]: Thank you, Your Honor.

{¶ 23} Based upon the foregoing, it is clear that this witness was prevented from testifying at trial due to trial counsel's failure to ensure that the state received timely disclosure of appellant's witnesses. Therefore, trial strategy is not at issue in part two, and we find that trial counsel's untimely disclosure of the potential witness does not rise to the level of reasonableness and competence that is required under *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 and its progeny.

9.

**{¶ 24}** However, that is not the end of the analysis under *Strickland*, for the issue of prejudice must still be examined. To establish prejudice, appellant must demonstrate a reasonable probability that the outcome of the proceedings would have been different had the witness been allowed to testify. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 138.

**{¶ 25}** Apart from trial counsel's limited summary of the witness's expected testimony set forth in the excerpts above, the record is silent as to what the witness would have said had she been called to the stand. Thus, establishing prejudice in this case would require appellant to reference matters not contained in the record. "Plainly, we cannot consider facts that are not in the record on appeal." *State v. Hogue*, 8th Dist. Cuyahoga No. 83483, 2004-Ohio-3871, ¶ 12, citing *State v. Carter*, 89 Ohio St.3d 593, 606, 734 N.E.2d 345 (2000).

**{¶ 26}** Based upon the record before us, it is unclear what impact, if any, the witness's testimony would have had on the outcome of these proceedings. Therefore, appellant has not met his burden of demonstrating that he was prejudiced by the trial court's exclusion of the witness's testimony, and his ineffective assistance of counsel argument must fail for that reason.

**{¶ 27}** Third, appellant asserts his trial counsel failed to challenge "inadmissible" evidence offered by appellee. He asserts defense counsel should have objected when: appellant was questioned about other bad acts, when Aaron was questioned about the veracity of Austin and appellant, when an officer was questioned about the veracity of the

10.

witnesses and offered hearsay statements from other individuals, and another officer repeated hearsay statements and testified as to his conclusions, assumptions, and assessments about the evidence. Furthermore, appellant argues his trial counsel failed to move for a Crim.R. 29 acquittal. However, appellant does not present any argument or cite to any legal authority to support his allegations that the evidence was inadmissible or which would justify a Crim.R. 29 acquittal.

{¶ 28} We need not address assignments of error which have not been fully briefed. App.R. 16(B)(7); *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390 (1988) (the "plain language of the rule" permits overruling or disregarding an assignment of error for the lack of briefing); *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553 (1933) ("[e]rrors not treated in the brief will be regarded as having been abandoned by the party who gave them birth."); *State v. Williams*, 6th Dist. Lucas Nos. L-13-1053, L-13-1054, 2014-Ohio-2834, ¶ 74 (disregard assignments of error not supported by citation to legal authority).

{¶ 29} Therefore, we find appellant's first assignment of error not well-taken.

{¶ 30} In his second assignment of error, appellant argues his convictions were contrary to the manifest weight of the evidence.

{¶ 31} A challenge to the weight of the evidence questions whether or not the greater amount of credible evidence was admitted to support the findings of fact. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17; *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 678 N.E.2d 541 (1997). When weighing the

11.

evidence, the court of appeals must consider whether the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn from it, consider the weight of the evidence, and consider the credibility of the witnesses to determine if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We must also presume that the factfinder properly assessed the evidence. *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984) (citation omitted).

{¶ 32} Appellant was charged with domestic violence, Montpelier Codified Ordinance 537.14(a), and violating a civil protection order, R.C. 2919.27(A)(1). Montpelier Codified Ordinance 537.14(a) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of any of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." A "reckless" violation occurs when "[a] person * * *, with heedless indifference to the consequences, * * * disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

12.

{¶ 33} Appellant asserts that his domestic violence conviction is contrary to the manifest weight of the evidence because the only physical evidence of bodily harm was injury to appellant's head while Austin testified only to a possible punch or push and the jury was misled by appellee's focus on appellant carrying a firearm. We disagree.

{¶ 34} Upon a review of the evidence, we find conflicting testimony was admitted regarding who started the attack. Austin Crist testified appellant pushed Austin, pointed a gun at him, and struggled with him over the gun. Appellant admitted he went to the residence and hid a gun on his person. However, he testified Austin attacked appellant when he attempted to destroy Austin's marijuana. The responding officers testified that Austin was visibly upset after the altercation and that appellant's injuries appeared consistent with Austin's account. Aaron Crist who overheard the confrontation confirmed that appellant was verbally aggressive.

{¶ 35} When all of the evidence is considered as a whole, we find that the jury did not lose its way in evaluating the evidence and drawing inferences from the direct evidence to conclude that appellant attempted to cause physical harm to Austin. We cannot, as a reviewing court, substitute our judgment for the trier of fact who saw the witnesses testify and assessed their credibility. Therefore, we find that appellant's conviction for domestic violence was not contrary to the manifest weight of the evidence.

{¶ 36} With regard to his conviction for violating the temporary restraining order, appellant argues the evidence reveals that appellant did not know that turning off and locking the electricity breaker would violate order. Once he knew this fact, he had the

13.

lock removed. He points to the comments of the jurors which reflect that the jury was confused as to whether there was a violation if appellant had insufficient notification of the prohibitions under the temporary restraining order and whether appellant did not understand the prohibitions.

{¶ 37} During deliberations, a juror questioned whether the temporary restraining order prohibited appellant from entering on the premises when Austin was not home. The juror believed appellant turned off the electricity, but she was not sure if he understood he could not go on the premises even if Austin was not there. The court clarified that a violation of the order is a violation, whether or not appellant complied with the remainder of the order.

{¶ 38} With regard to the violation of the temporary restraining order, appellant admitted that he turned off the electricity to the home and placed a lock on the breaker box. We agree the record supports appellant's assertion that the trial court only told him that he could not go near Austin. While appellant testified he never read the order, he acknowledged service of the order and it prohibited appellant from interfering with Austin's right to occupy the residence by canceling utilities. The jury was entitled to disbelieve appellant's testimony or conclude that failure to read the order was reckless. The jury could also have believed the officer who testified that he personally warned appellant that turning off the utilities would normally be a violation of any temporary restraining order and that appellant proceeded to act in violation of the order.

14.

**{¶ 39}** When all of the evidence is considered as a whole, we find that the jury did not lose its way in evaluating the evidence and drawing inferences from the evidence to conclude that appellant recklessly violated the temporary restraining order. We cannot, as a reviewing court, substitute our judgment for the trier of fact who saw the witnesses testify and assessed their credibility. Therefore, we find that appellant's conviction for violating the temporary protection order was not contrary to the manifest weight of the evidence.

**{¶ 40}** Appellant's second assignment of error is not well-taken.

**{¶ 41}** Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Bryan Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

_____
                                                                JUDGE
Christine E. Mayle, J. _____

_____
Gene A. Zmuda, P.J. _____                    JUDGE
CONCUR.

_____
                                                                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.